3-12-2562, Greg Simmons, a columnist for Shane Boyles, this is Michael A. Campion, et al., and this is my co-author, Frank. Mr. Boyles? Thank you all. Before I begin, I would like to express an apology to the Court. I read my brief before we got started, and it was littered with grammatical and typos, which were not intentional, but were prolific, so I apologize for that. I didn't mean to be disrespectful, but it was a little bit disrespectful to the reader. Secondarily, another preliminary matter, there was a motion to dismiss filed in this case. Upon reviewing the documents getting ready for today, I reviewed the docketing statement that I filed, and it says squarely in the docketing statement that the plaintiff did not replete malpractice. So I wanted to draw the Court's attention to that. I don't think I really contested that in my response to the motion to dismiss. The concern from the plaintiff's point of view is what race judicata effect that particular aspect of the case might have upon the other claims. So we request that the Court, in the event that this is returned back to the Circuit Court, address that, because I believe that this is an issue that may be problematic. Moving on to matter at hand, standard of review is de novo, from my recollection that wasn't addressed or not contested by the defendant. So I believe we're under de novo standard of review, and we have a 2615 and 2619 aspect to this particular case. The standard under 2615 is whether or not the plaintiff sufficiently pleaded causes of action. We believe that we did, maybe excessively so. Was the 619 the alternative rationale for the trial judge? What's your position on that? I don't know the answer to that. I think it was maybe the primary, the preeminent rationale for the trial judge. I mean, there was talk of 615 and 619. Correct. The judge said he dismissed under both, but how I was going to describe this and what I think the judge did is he saw this Johnston v. Wilde case as sort of a magic bullet that took out, with one shot, took out four claims under two different statutes, and I don't think that's proper under 2615. The standard under 2615 is whether or not we sufficiently pleaded causes of action. Count one was well pleaded. Count two was sufficient, as were counts three and four. So I understand that the trial court dismissed under 2615, but we think that dismissal was an error. And definitely, count two, the intentional interference with a business or contractual relationship count, I think the court noted in its opinion that the plaintiff could not muster sufficient facts to carry on with that particular count. And that was the first time, the third amended complaint was the first time that that particular claim had appeared. And there were three amended complaints, not because of repeated dismissals, but because plaintiff voluntarily had a new action. This is not a situation where it was dismissed and then we came back and filed a first amended complaint. So I wanted to bring that to the court's attention as well. Under 2619, what we understand happened in the trial court below is that the judge decided that the Johnston case required a particular standard, which we think isn't correct, and then dismissed count one for that reason and then also dismissed counts two through four for the same reason, which we don't think follows from Johnston v. Weill, which is a family law case. It's not a tort case at all. It had some discussion of the Mental Health Confidentiality Act, and I think that's relevant with respect to counts one and two. But the relationship between the Johnston case and counts three and four, which are tort cases, is tenuous. So we believe that was an error that the judge used the Johnston case as a basis to dismiss counts three and four. And another error, there's an inconsistency in the trial court's order. The trial court relied upon the act that it said was inapplicable under Johnston v. Weill to create some sort of immunity for the defendants with respect to counts two through four. So on the one hand the judge is saying the act doesn't apply because of the standard in the Johnston case, and then at the same time the trial court will apply the act to counts two through four as a complaint. So we think there's an inconsistency there that's not reconcilable. The standard under 2619A9 in a situation where there is a complete negation of the entirety of the complaint is whether or not dismissal is proper as a matter of law. We understand that this Johnston case came out. We understand that it's the newest Supreme Court opinion on the case. But we also understand that Johnston didn't overrule anything. And we also understand that the Supreme Court at least was trying to say in Johnston that this is the law now and this has always been the law. So it's not our belief that the Supreme Court was attempting to change the law in any way. And it expressly reaffirmed, if not the cases themselves, but the principles of the Norskog decision and the Reedy decision. I don't recall any mention of the Sangherardi appellate court case in the Johnston case, but it wasn't a police officer situation. It was a family law situation. What we believe the trial court did below is they excluded Norskog and relied exclusively on Johnston. And we don't believe that's the proper analysis. We understand that Johnston has to be part of the analysis, but it is not all of the analysis. Norskog is still good law. Norskog may have been a fitness for trial examination under the criminal code, but that doesn't make it any more distinguishable than a family law case with a court-ordered evaluation under the dissolution procedure, the custody procedure, the family code. So the cases need to be harmonized. And whatever the Supreme Court was trying to say in Johnston, it appears that they suggest that multiplicity or quantity is what is required to establish some sort of therapeutic relationship with any health professional. And that is not the law, and it never has been the law. I was taught in law school, and it's still the case, that a one-time encounter with a professional, including myself or another attorney, is privileged. Quantity cannot be the standard. The Supreme Court didn't mention what the standard was in Johnston, but through the process of elimination, I think we can eliminate the standard of quantity, that there has to be repeating contacts. And that standard is unworkable because the Supreme Court didn't give a magic number. It didn't say two was sufficient. It didn't say three was sufficient. So it's not quantity that controls whether or not a relationship can be therapeutic. And the Supreme Court didn't overrule Norskog, which involved a one-time encounter. So quantity is not the answer. Quality, perhaps, is the answer. And we believe, in this case, the quality of the contact, the extent of the contact involved with Dr. Campion was sufficient. Because Dr. Campion prescribed a course of treatment and endeavored to oversee that treatment. He was the gatekeeper, for lack of a better term, for the plaintiff's entire treatment that we have alleged was unnecessary to begin with. But this wasn't a situation where Dr. Campion had a one-time encounter with no intention of ever having another encounter again with the plaintiff. He intended to be involved in his treatment for at least one year. So whatever the standard is, we think it was met here in this case. And we think it squarely falls within the statute. With respect to the other counts, with respect to the intentional interference of the business relationship, we believe we alleged all that was required. We believe that there was a breach of contract, that there was knowledge of the contract, that there was an inducement of the breach. And we believe that we alleged it was unjustified. Now, I will say that we tied the unjustification, I guess if that is a word, to the violation of the Act. It was at count two of the Third Amendment complaint. Had we alleged that at count four, we could have also incorporated counts three and four and said it was unjustified because of the violation of the Act and it was unjustified because there was no ailment to begin with. There was no reason for the treatment at all. So we think we did allege it sufficiently, and we think even if that aspect, that justification is found to be not sufficient, there are other justifications that we could have alleged to continue with that count. The affirmative fraud, and we alleged fraudulent concealment, and the negligent misrepresentation, there is no requirement of a direct statement. And that is where we made our crude analogy to the termite inspector. Who pays for the service is irrelevant. The defendants argue that you need a direct statement, but that is not the law. So that was sufficient as well. Thank you. We don't believe that Johnston B. Weil is this magic bullet that could, with one shot, take out, in essence, eight counts, or four counts under 2615 and 2619. We believe we sufficiently pleaded all four counts under 2615, and we believe that it does not apply. It is not a quantitative standard under Johnston B. Weil, and if it is applied along with Norscog, we believe we have the valid cause of action. Mr. Brandt? Thank you. May it please the Court, Philip Brandt, Pretzel and Scoffron, on behalf of Defendant Appleese, Defector Michael Campion, and Campion Barrow Associates. Joining me at the council table is Robert Mark Chalmers. Your Honor, I would first like to address the motion to dismiss. Defendant alleges that it was filed with the notice of appeal and should be continued on if this case is remanded back. However, the brief of the appellant makes no reference whatsoever to the December 7th order, which he claims should be preserved, which is a violation of Illinois Supreme Court Rule 341, which requires that some reference be made regarding all the allegations that are being alleged. Further, as to the notice of appeal, it requires that the notice of... In the lower court, the second amended complaint was dismissed as to count one, which was the only count, which was the count that was dismissed was not realleged in the third amended complaint. And in fact, there was no reference of it. And therefore, the issue of whether count one should be preserved was not there. It made no reference whatsoever. And therefore, we ask that this court grant the motion to dismiss as to... that was taken with the case regarding count one of the second amended complaint. As to Justice Carter's comment regarding the 2-619 motion, that was an alternative finding of the court. What the defendants alleged in the lower court was that under 2-615, the Confidentiality Act does not apply. And in the alternative, if it did apply, under Section 2 of the Confidentiality Act, that if there is an imminent risk of harm, that discussions that would otherwise be protected may be communicated to those... to receive that to take further action. And as long as those statements are made, those communications are made in good faith, then the Confidentiality Act, even if it applies, would allow the communications. They would not be protected. And that any other allegations of any other counts, civil, criminal, administrative, would therefore be eliminated under Section 11 of the Confidentiality Act. And that was the court's ruling. It said they found that even if... because it sided with the defendants as to the Section 2-615, that 2-615, that the Confidentiality Act did not apply. But it said that even if I'm incorrect on this, that the 2-619 does apply.  There is no indication, through affidavit or otherwise, that the plaintiffs presented that there was some sort of bad faith on behalf of making the communications, and therefore, under Section 11 of the Confidentiality Act, that all these counts would be dismissed. As to the Section 2-615 motion, the court is correct in finding that the confidentiality did not apply. We don't cite Norskog or Rita, because those cases don't deal with the holding that Johnson brought forward. And that holding in Johnson states that, as a threshold matter for the Confidentiality Act to apply, there must be a therapeutic relationship. In this case, and it was not alone in finding that. It cited other cases in recognizing that a therapeutic relationship was required. It cited an Illinois Supreme Court case, Novak, where the court found that the act preserves the confidentiality of records of communications of persons who are receiving or have received mental health services. They cited Martino, which is a 4th District case, where the court said that the act only applies to people entering a therapeutic relationship with clients. And they based that finding by looking at the legislative history and the discussions that they had when drafting the Confidentiality Act. Furthermore, in the 1st District, the Swedish American Hospital case found that the act only applies to situations in which the patient is seeking treatment for mental health conditions. So I think what we can glean from that, even though a therapeutic relationship is not defined in the act, the courts require that first, that a person needs to be seeking treatment in order to be covered under the Confidentiality Act. And second, that once they have entered treatment, those conversations, those records are protected under the act. In this case, there's no indication, no allegations, that the plaintiff ever entered a therapeutic relationship with the defendants. The allegations show that the plaintiff was ordered by the police department to take part in this fitness evaluation. He didn't seek out treatment. He also, furthermore, the defendants prepared a report stating that the plaintiff must seek treatment, and there's no allegations that they were supplying treatment at this time, or at any time. And furthermore, even in his deposition testimony, the plaintiff recognized that Dr. Campion was not his therapist, and that he was, in fact, solely there just to administer the fitness for duty evaluation, and was not there to be his therapist. They were not seeking treatment. He was just recognizing solely as one thing and one thing only, and that was the fitness for duty evaluation. And that's what makes Johnson important, and that's what makes Johnson controlling in this case. Now, while the facts are different, that makes no difference, because the whole thing is clear, that there must be a therapeutic relationship for the confidentiality act to apply. There's not one here. The difference between NORSCOG and RADA is the fact that the defendants there are already involved in a therapeutic relationship, and that the plaintiffs were trying to bring forward those records in a proceeding where they did not put their mental health at issue. And the court said, absolutely not. You can't do that. They're protected. They're engaged in a therapeutic relationship. Those records cannot be brought forward. And the illusion that Dr. Campion was somehow a gatekeeper is not present in the allegations of these facts. He says merely, these are my recommendations. I find the plaintiff unfit for duty. Here are my evaluations. Here are my findings. Here is my opinion on what needs to be done. And that's it. What goes on from there is really up to either the police department or the treating physicians. And as to the on to count two, the tortious interference with contract, courts have recognized that in certain situations, if there is a privilege, an interference of a breach, a party can induce another party to breach a contract. And in this case, it was exactly the same case as Turner v. Fletcher. In that case, they had the same exact situation where a plaintiff police officer had a fitness for duty evaluation. The results were adverse to what he believed should not be found unfit. And then he brought claims such as a defamation claim and a tortious interference claim. And the court there found that there was a privilege. And they found there was a privilege because the communication of police officers' fitness is subject to a privilege because there's a superior interest that lies in evaluating police officers' fitness of duty and to allow those evaluating to freely render an opinion. This is the same exact case. The privilege is there, and therefore, the next step is that the plaintiff has the burden to plead and prove that somehow it was done so, that the opinion was given in some way maliciously. And maliciously has been defined by the courts, the Illinois Supreme Court and HPI Healthcare Services, as it must be intentional and unjustified. And in this case, there's no allegations that he was in some way rendering his opinion, which he was hired to do, in some way in a malicious manner. There was no sort of intention, and it was completely unjustified. There are allegations that he violated, that Dr. Campion violated Section 5 of the Confidentiality Act by bringing forth these statements that he wasn't supposed to bring forth, but that's not enough. There's nothing here on these allegations that show that somehow that violation was malicious. In fact, the allegations in the complaint show the complete opposite, that Dr. Campion and Campion Barrow and Associates took steps to have, they went through three confidential forms and had the plaintiff sign them and review the confidentiality involved in a case, even though the act didn't apply. And so they took steps to protect confidentiality, even when they didn't have to. That indicates, that completely negates the idea that there's some sort of malicious motive here by the plaintiffs. And therefore, the tortious interference count was properly denied, dismissed. Furthermore, on to the fraudulent misrepresentation claim, the plaintiff alleges that there does not need to be a direct statement, but, however, the courts have found that the statement needs to be made to someone, they need to act in reliance, and it's their action of reliance in that statement that results in the damages. In this case, even assuming that there is somehow some sort of fraudulent statements that were made, if we get to the point of the next three elements, then we have to look at who was the statement made to. The statement was made between Dr. Campion and Campion Barrow Associates and the Pekin Police Department. And once that statement was made, the police department acted on reliance of that opinion, and it was their action that allegedly caused the plaintiff's damages. Here he tries to put himself in the position of the actor in that no direct statement needs to be made. But, however, his attempt to do that falters on the fact that his damages are not a consequence of something he did in reliance of that statement that was made. It all goes back to the police department and the reliance that they had on the statements, and that's what caused the damage. So that complaint falls. And then negligent misrepresentation. The only difference there is that the state of mind is different. It's not whether or not the false statements were made, but whether or not false statements were missed and just not examined. But we go back to the same problems. They have the same problems in the negligent misrepresentation claim as they have in the fraudulent misrepresentation claim, is that the damages that they're claiming, he didn't act in reliance of those statements. There are no allegations that he acted in reliance of those statements, and therefore the damages that he's alleging are not the result of his reliance, and therefore he can't meet all elements of either of those two claims, and therefore both were properly dismissed. If there are no further questions, I would ask that this court affirm the decision of the trial court as to all counts. Thank you. Thank you, Mr. Brant. Mr. Boyle, Senator Boyle. Before you get on to us, if you want to say anything about that, if you've preserved the issue with regard to the December 7th summary judgment. Your Honor, we didn't intend on going forward with the – I think it may have. I think we may have preserved the core allegations, but we had no intention of going forward with the malpractice claim. We thought we had better claims, which were the statutory claim and the intentional interference with the business relationship. So we didn't have any intention of going forward with that. My only concern is that the trial court below and also the defendants analogized malpractice to negligent misrepresentation, basically saying the claims were the same. So our only concern is that is there some sort of – honestly, I don't know how this works, but is there some sort of preclusive effect by not going forward with that? I mean, because there's nothing in the briefs really arguing about the malpractice claim, right? Right. Our intention was to get to trial, and we thought going to trial on that claim and all the other claims would have been not productive and wouldn't have convinced the jury of anything. So you've sort of abandoned anything with regard to that. Yes, sir. So really there's – really when the motion dismissed was taken with the case, you've really abandoned that claim anyway. That's why you didn't brief it, right? Correct. Our only concern is that somehow – There's not interconnection. That's what your concern is. Right. Yes, sir. In other words, that there wouldn't be a ruling on these other matters because of that ruling. Correct. Correct. Correct. I just wanted to get your statement about that or some clarity about that. Thanks. With respect to the Johnson case, the court used the term evaluation. Whatever that was, it did not result in treatment. There was a one-time encounter. It seems all the parties were involved in the same psychologist, which kind of makes privilege and confidentiality problematic to begin with, and that did not result in treatment. Here, this did result in treatment. The Rule 23 order that we tried to bring up in the trial court below, which we had referenced, that would not exist if there wasn't a course of treatment prescribed by the defendant. That was not alleged in the complaint, but that was squarely before the trial court below for purposes of the 2619 motion. The cases are different. There's a lot of difference between this case and what happened in Johnson, and we think this is much more like the Norskog situation. About us not alleging damages as a result of the statements about the plaintiff in his record, which the plaintiff had to rely upon, yes, we did allege damages. Dr. Campion said the plaintiff had to go seek treatment. He did. That wasn't true. He's still paying the bills. We allege those damages. Whether or not he stopped going after work-related damages, that's one thing, but he did suffer damage. He had to, in essence, clear his record of these allegations made by the doctor, clear his name of these allegations made by the doctor, and we allege that. Also, they said we didn't allege malice. Well, we alleged intentional fraud, which my understanding is we called the doctor a liar, so I don't know how the defendant can say we didn't allege malice. We could have numbered the counts better. We could have put the business relationship count at the end and incorporated the intentional fraud allegations into that, but we alleged malice in the complaint. Really what the defendant wants to do is the defendant wants to redraw the boundary lines for police officer fitness for duty examinations that were sort of spelled out in the Sangherardi case, and there was a balance struck there. We think the balance is appropriate, and we don't think there's any reason to abandon that balance. The ultimate finding, whether an officer is fit or unfit, we recognize. Plaintiff is a police officer. He recognizes. If Dr. Campion said he's unfit and I recommend he go seek treatment, this case wouldn't exist. But Dr. Campion went far beyond that. He disclosed records. He disclosed the sort of intimate details of the plaintiff's personal life that existed in McGreal v. Ostroff. He issued these warnings, which, by the way, are not privileged under Section 11 of the Act. So this is not a situation where Dr. Campion just said he's unfit for duty. That's all I can say. He'll have to go seek some treatment. That's not what happened here. There was an intimate involvement here with Dr. Campion in the plaintiff's treatment. This case is qualitatively different from the Johnston case, and we think it was a mistake for the trial court below to rely upon Johnston to, in essence, wipe out the entire complaint. Thank you. Okay. Thank you, Mr. Boyles. And thank you both for your arguments today. We will take the matter under advisement to get back to you with a written disposition within a short period of time. We'll now take a short recess for the panel. Court is now in recess.